AO 91 (Rev. 11/11) Criminal Complaint

Sealed
Public and unofficial staff access to this instrument are prohibited by court order

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States Courts
Southern District of Texas
FILED
October 23, 2026
Nathan Ochsner, Clerk of Court

United States of America
v.
Aman Mehta

Defendant(s)

Case No. **4:26-mj-680**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of November 1, 2025 in the county of Harris in the Southern District of Texas, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1344 | Bank Fraud |

This criminal complaint is based on these facts:

Please see attached affidavit.

☑ Continued on the attached sheet.

[signature]
*Complainant's signature*

Austin Barton, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: October 23, 2026

[signature]
*Judge's signature*

City and state: Houston, TX

Peter Bray, U.S. Magistrate Judge
*Printed name and title*

Sealed
Public and unofficial staff access to this instrument are prohibited by court order



## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

## INTRODUCTION AND AGENT BACKGROUND

I, Austin Barton, a Special Agent with the Homeland Security Investigations (HSI) being duly sworn, hereby depose and state as follows:

1. I have been a Special Agent with Homeland Security Investigations ("HSI") since September of 2025. As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request an arrest warrant. Prior to working at HSI, I was a Special Agent with the Internal Revenue Service – Criminal Investigation ("IRS-CI") for approximately 1 year, and a tax accountant with Deloitte Tax LLP ("Deloitte") for approximately 2 years. As a Special Agent with HSI and IRS-CI, my duties have included conducting complex criminal investigations involving money laundering, tax evasion, and financial fraud offenses. As a tax accountant with Deloitte, my duties included complex corporate tax preparations and audits. I have a bachelor's degree from University of California-Los Angeles, and a master's degree from DePaul University in Accountancy.

## JURISDICTION

2. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## LEGAL FRAMEWORK

3. 18 U.S.C. § 1344 makes it a federal offense for any person to knowingly execute, or attempt to execute, a scheme or artifice to defraud a financial institution. 18 U.S.C. §1344 prescribes fines not more than $1,000,000 or imprisonment not more than 30 years, or both.

## BACKGROUND ON INVESTIGATION

4. GROW MATERIALS LLC ("GMLLC") is a Houston-based plastics distributions company. In September of 2026, HSI identified allegations that GMLLC fraudulently obtained a multi-million-dollar asset-based revolving line of credit ("ABRLOC") from Sunflower Bank North America ("Sunflower Bank"). Sunflower Bank is insured by the Federal Deposit Insurance Corporation. In reviewing open-source intelligence, HSI identified allegations claiming that GMLLC misrepresented its assets to Sunflower Bank. Subsequently, in or around November of 2025, Sunflower Bank approved and issued GMLLC an approximate $25,000,000 ABRLOC. In light of these allegations, HSI then commenced an investigation.

## BACKGROUND ON GROW MATERIALS LLC

5. According to the Texas Comptroller database ("TXCOMP"), as of October 22, 2026, GMLLC registered with the Texas Secretary of State on March 13, 2025. TXCOMP lists GMLLC's mailing address as 6464 Northdale Street, Houston, Texas 77087-5826. TXCOMP lists GMLLC's Texas Secretary of State registration status as active. GMLLC has warehouses in Cartersville, Georgia and Houston, Texas. Per the Rhode Island Secretary of State, GMLLC is organized in Rhode Island as a domestic limited liability company, initially organized on May 27, 2014, with Naresh MEHTA ("N. MEHTA") listed as the resident agent. The investigation revealed

GMLLC's Chief Executive Officer is N. MEHTA, and its President is Aman MEHTA ("A. MEHTA").

## PROBABLE CAUSE

*Sunflower Bank North America Civil Suit*

6. I identified a Harris County, Texas Judicial District Court civil petition filing (the "Sunflower Bank Petition") identifying Sunflower Bank as the plaintiff. The Sunflower Bank Petition is filed on May 12, 2026. The Sunflower Bank Petition is for recovering amounts under a commercial loan that was extended to GMLLC. The Sunflower Bank Petition states that GMLLC's principal place of business is Houston, Texas, that Sunflower Bank's principal place of business is in Dallas, Texas. The Sunflower Bank Petition states that A. MEHTA and N. MEHTA are both residents of Texas. The Sunflower Bank Petition states that GMLLC's receivership property is in Harris County, Texas. The Sunflower Bank Petition states that GMLLC failed to comply with a credit agreement "… with respect to certain material representations and warranties concerning receivables due from RPC International Inc. and certain related receivables due from an affiliate of Borrower, Synchronized Energy Systems LLC…"

*Interview with Sunflower Bank North America*

7. On October 22, 2026, HSI SA Ameer Menai (SA Menai) and I conducted a virtual interview with Douglas Vitek (Vitek) and Stacy Patterson (Patterson) from Sunflower Bank. Vitek is an Executive Vice President and Head of Asset Based Lending. Vitek stated he has been with Sunflower Bank for approximately 6 years and has worked in the banking industry for approximately 40 years. Patterson is the Anti-Money Laundering Manager for Sunflower Bank.

8. Based upon my training and experience, an ABRLOC is an approved amount that can be utilized by a company based on the company's cash-flow needs. Banks are typically the approvers and issuers of ABRLOCs. When a company is approved for an ABRLOC, the ABRLOC functionally becomes a loan in whatever amounts a company utilizes. A company can generally use the entirety of a given ABRLOC or none of it at all. An ABRLOC is generally issued in accordance with a company's collateral in addition to a company's general financial health. The financial health of a company is typically evaluated by self-reporting from a company in addition to due diligence the approving bank imposes.

9. Based on my training and experience, collateral is often synonymous with a company's assets. For instance, if all other factors being equal, a company holding $5,000,000 in assets will be approved for a larger line of credit when compared to a company holding $2,000,000 in assets. This is because a bank will typically approve progressively larger ABRLOC in proportion to the assets that a company possesses. That is, the financial institution can collect or liquidate the assets for collections purposes, if a company defaults on its payments due on the ABRLOC.

10. Vitek stated Sunflower Bank conducted due diligence, using a third-party, before approving GMLLC's request for a $25,000,000 ABRLOC. Vitek stated that there were no blatant red flags when Sunflower Bank performed its due diligence. Sunflower proceeded to issue GMLLC the ABRLOC in or around November 2025. Vitek recalls, during this due diligence period, it was revealed that GMLLC possessed an accounts receivable ("A/R") from one particular company, RPC International Inc. (RPC), amounting to approximately 50% of GMLLC's total A/R. Vitek recalls Sunflower Bank's due diligence team reaching out to RPC for purchase receipts on purchases made to GMLLC. According to Vitek, the due diligence team also reached out to

GMLLC and GMLLC provided Sunflower Bank with sales invoices it had issued to RPC. Vitek recalls RPC purchase receipts to GMLLC matching the sales invoices GMLLC sent to RPC. Vitek recalls Sunflower Bank's due diligence team concluding that RPC and GMLLC soundly verified this material A/R that would factor into the approval of an ABRLOC to GMLLC. Vitek stated that Sunflower Bank's due diligence process illustrated that GMLLC's A/R appeared true and correct, therefore Sunflower Bank proceeded with the approval of the $25,000,000 ABRLOC for GMLLC in or around November 2025. Below is a snippet from Sunflower Bank's third-party due diligence team in its assessment of GMLLC's A/R concentrations:

***A/R Concentrations***

| Customer Name | City, State | Terms | % of Aging | Total | 0-30 PID | 31-60 PID | 61-90 PID | 91–120 PID | 121+ PID |
|---|---|---|---|---|---|---|---|---|---|
| Rpc International Inc | Sugarland, TX | Net 90 | 44.2% | $7,895 | $3,065 | $4,032 | $472 | $0 | $326 |
| Synchronized Energy Systems LLC | East Greenwich, RI | Net 90 | 11.8% | $2,114 | $2,054 | $59 | $0 | $0 | $0 |

11. Vitek stated that GMLLC approached Sunflower Bank again in or around March of 2026, requesting an increase in GMLLC's ABRLOC's credit limit. According to Vitek, GMLLC stated that the reason for the request was due to GMLLC's growth and larger customer demand. That is, GMLLC needed more working capital to keep up with increased customer demand.

12. Vitek stated Sunflower Bank engaged in additional due diligence into GMLLC for this new request. Vitek stated the due diligence specifically analyzed GMLLC's aging A/R. Vitek stated the due diligence on GMLLC was focused on determining whether GMLLC customers were paying GMLLC in a timely manner. During this due diligence process, Vitek stated it was observed that RPC was not paying their A/R to GMLLC, as it was observed that RPC was failing to remit payments to GMLLC.

13. Per Vitek, Andy Anderson (Anderson), an associate of Sunflower Bank, frequently discussed GMLLC matters with N. MEHTA. That is, N. MEHTA was Sunflower Bank's main

point of contact for GMLLC. Vitek stated himself and Anderson rarely spoke with N. MEHTA's son, A. MEHTA. Vitek stated that S. MEHTA, wife of N. MEHTA, was the third leader of GMLLC alongside N. MEHTA and A. MEHTA.

14. Per Vitek, on approximately April 30, 2026, Anderson informed Vitek that he had noticed there were no funds going into GMLLC's Sunflower Bank accounts. Vitek stated he recalls Anderson informing him that Anderson had just spoken over the phone with N. MEHTA. Anderson stated it was an unusual discussion because N. MEHTA is typically very conversant and responsive. Anderson informed Vitek that N. MEHTA had not answered two of Anderson's calls. However, when N. MEHTA did eventually answer Anderson's call, N. MEHTA stated he would talk with Anderson the following day. Vitek stated to SA Menai and I that businesses often have financial problems and reach out to their banks for assistance. Based on prior analysis and business observations, Vitek anticipated that the scheduled May 1, 2026 telephonic discussion would likely address ongoing liquidity concerns or financial difficulties being experienced by GMLLC.

15. On approximately May 1, 2026, according to Vitek, Vitek and Anderson spoke over the phone with A. MEHTA and N. METHA. Vitek stated the discussion was unusually different because N. MEHTA spoke minimally and A. MEHTA did nearly all the speaking. Vitek recalls A. MEHTA stating the following:

a. We are aware of Sunflower Bank's concerns with GMLLC's A/R on RPC. We are a family business, and we are working on a solution. RPC is unable to pay us because we have not been truthful to Sunflower Bank.

b. We informed Sunflower Bank that the terms of RPC has a period of 30 days to pay GMLLC when goods are rendered from GMLLC to RPC. However, the actual agreement is that RPC only pays GMLLC when RPC sells the inventory GMLLC sells to RPC.

c. We have engaged in a scheme where our sister company, Synchronized Energy LLC (Synchronized), pays RPC. That is, RPC orders materials from GMLLC. GMLLC procures the necessary inventory for these orders from Synchronized. In

doing so GMLLC pays Synchronized for the inventory and any money paid to RPC would be paid back for raw materials. But, there is no longer money to be paid.

d. Vitek recalls asking A. MEHTA: *So, you're telling me you have conspired to defraud the bank?* A. MEHTA stated that he did.

e. Vitek recalls asking A. MEHTA: *And you're telling me that none of the collateral that we have has ever been legitimate?* A. MEHTA stated that's fair and correct.

f. Vitek recalls asking A. MEHTA: *You're telling me that you have engaged in a scheme to deliberately mislead the bank?* A. MEHTA responded that he did.

16. Vitek stated that A. MEHTA and N. MEHTA conducted an elaborate scheme that Vitek had not seen before, primarily due to the fact that the GMLLC was in control of a customer to create a façade of legitimate business customer. Vitek explained that Sunflower Bank's initial due diligence into GMLLC identified no signs that GMLLC was engaged in fraudulent financial reporting, because GMLLC was able to conspire with RPC to effectively create a false persona indicating that RPC was a legitimate, arm's-length company.

17. Vitek stated it was unlikely that N. MEHTA could have been unaware of the scheme. Vitek stated N. MEHTA was the main point of contact for discussions regarding GMLLC throughout its relationship with Sunflower Bank. Further, Vitek stated that a family-owned business, such as GMLLC, would be impractical for N. MEHTA to be unaware of the scheme occurring, since N. MEHTA would be able to see a lack of movement in inventory when compared to the financial figures being reported to Sunflower Bank.

18. Patterson stated that Sunflower Bank held a preliminary loss amount between $15,000,000 and $24,000,000 due to GMLLC's default. It was stated that this figure was subject to change based on other factors such as any proceeds Sunflower Bank may receive from the liquidation of any GMLLC assets.

19. According to law enforcement databases, A. MEHTA is scheduled on a one-way flight, outbound from the Miami International Airport to the Dominican Republic, on October

24th, 2026. As of October 22nd, 2026, there is no scheduled inbound flight back to the United States.

## SUMMARY OF CONSPIRACY

20. In summary, based on the facts above, I have probable cause to believe GMLLC and its managing members, A. METAH and N. METAH, have engaged in a conspiracy to knowingly execute a scheme to defraud a financial institution, which began in or before November of 2025, when the ABRLOC was extended to GMLLC by Sunflower Bank.

21. Based on the foregoing facts, I have reason to believe that A. METAH and N. METAH knowingly presented Sunflower Bank with fictitious financial documents. These fictitious financial documents caused Sunflower Bank to approve the issuance of a multi-million-dollar ABRLOC to GMLLC. The ABRLOC then went into default by GMLLC after approximately six months. Per Vitek, the ABRLOC would not have been approved if the bank had been aware that the information presenting RPC as an arm's length, legitimate GMLLC customer was fraudulent.

22. Per the interview with Vitek, in or around May of 2026, A. METAH admitted to creating this scheme to save the family business, admitted to defrauding Sunflower Bank, admitted to GMLLC's collateral never being legitimate, and admitted to a scheme to deliberately mislead the bank.

## CONCLUSION

23. Based on the foregoing information, I respectfully submit that there is probable cause to arrest A. MEHTA for Bank Fraud, in violation of Title 18 U.S.C. § 1344.

Respectfully submitted,

Austin Barton
Special Agent
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on October 23rd, 2026, and I find probable cause.

Hon. Peter Bray
United States Magistrate Judge